UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

M.D. A. TALUKDER,

                                    Plaintiff,

              v.

STATE OF NEW YORK, NEW YORK STATE
DEPARTMENT OF CORRECTIONS AND
COMMUNITY SUPERVISION, ANTHONY J.
ANNUCCI, and KIM GHATT,

                                    Defendants.

---

22-CV-1452 (RA)

<u>OPINION & ORDER</u>

RONNIE ABRAMS, United States District Judge:

Plaintiff M.D. A. Talukder, a Muslim man seeking to become a New York State Department of Corrections and Community Supervision ("DOCCS") officer, brings this action against Defendants State of New York, DOCCS, and two individuals, DOCCS Acting Commissioner Anthony J. Annucci and Kim Ghatt, the Acting Director of the DOCCS Training Academy (the "State Officials"). Talukder asserts that Defendants have infringed upon his right to maintain a beard as an expression of his Muslim faith in contravention of the First and Fourteenth Amendments to the U.S. Constitution pursuant to 42 U.S.C. § 1983, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Pending before the Court is Defendants' motion to dismiss Talukder's First Amended Complaint (the "Complaint").

In bringing this action, Talukder raises substantially similar claims to those in a related matter pending before this Court, *Sughrim v. State of New York, et al.*, 19-cv-7977 (RA) (S.D.N.Y.). In *Sughrim*, New York State corrections officers sued several of the same defendants named in this action, alleging constitutional and statutory violations regarding their right to wear

beards consistent with their religious beliefs. On November 30, 2020, this Court granted the *Sughrim* defendants' motion to dismiss in part, but allowed the majority of the constitutional and statutory claims to proceed. *Sughrim v. New York*, 503 F. Supp. 3d 68 (S.D.N.Y. 2020). Specifically, the Court concluded that the *Sughrim* plaintiffs had plausibly alleged that DOCCS applies its grooming policy in such a way that denies corrections officers the right to wear beards for religious reasons, while simultaneously permitting beards for secular reasons. The Court therefore held that the plaintiffs had plausibly alleged claims under the Free Exercise Clause and Title VII.

In many respects, the factual and legal issues presented on Defendants' instant motion to dismiss are identical to those the Court addressed in *Sughrim*. Unlike the plaintiffs in *Sughrim*, however, Talukder, while offered a probationary appointment as a corrections officer trainee, never became a corrections officer due to his unwillingness to trim his beard. As a result, Defendants argue that Talukder was justifiably subjected to a grooming policy that applies specifically to trainees, and that the Court's reasoning in *Sughrim* does not control here. The Court disagrees.

Although Defendants' distinction between corrections officers and trainees may ultimately prove to be warranted, at this early stage in the litigation, Talukder has plausibly alleged that DOCCS's grooming policy impose impermissible burdens on conduct motivated by religious beliefs, including that of trainees, while simultaneously permitting similar secular conduct. Consistent with that conclusion, the Court adopts in substantial part its reasoning from its opinion in *Sughrim*, denying Defendants' motion to dismiss with the exception of Talukder's Title VII retaliation claim.

## FACTUAL BACKGROUND

The facts in this section and throughout are taken from the Complaint and are assumed to be true for purposes of this motion. *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).

Talukder is a Sunni Muslim who wears a three-inch beard consistent with his religious beliefs. Compl. ¶¶ 22, 23. After he arrived at the DOCCS Training Academy in Albany, New York, on August 1, 2021 with the goal of becoming a corrections officer*, id.* ¶ 24, he was told he could not receive an ID card because of his beard, and was taken to see the Academy's acting director, Kim Ghatt, *id.* ¶¶ 26, 27. Ghatt told Talukder that the longest beard that DOCCS and/or New York State could accommodate was 1/8 of an inch, and that if he failed to cut or trim his beard, he would not be permitted to enter the Training Academy. *Id.* ¶¶ 28, 29. Talukder insisted that he could not trim his beard because his religious beliefs require that he maintain a beard at the length of a "fist-full." *Id*. ¶ 30.

The following day, Talukder submitted a religious accommodation request to DOCCS seeking to wear a three-inch beard. *Id.* ¶ 31. On August 12, Ghatt denied that request, stating in an email that his beard "will be kept at a length of no longer than 1/8 inch." *Id*. ¶ 32. According to Talukder, Ghatt and DOCCS "failed to engage in any process" in "determining the alleged accommodation being offered," and did not provide any explanation for the denial of the religious accommodation he sought. *Id.* ¶¶ 33, 34. On October 12, 2021, Talukder rejected Defendants' offer to wear a 1/8 of an inch beard on the grounds that it "in no way accommodates his sincerely held religious beliefs." *Id.* ¶ 35. As a result of the denial of his accommodation request, Talukder has been barred from attending the Training Academy and denied an annual salary of $43,937. *Id.* ¶ 45.

Although Talukder has not been permitted to wear a beard longer than 1/8 of an inch as a DOCCS trainee, DOCCS corrections officers are permitted to wear longer beards for non-religious reasons. For example, a DOCCS policy memo, Directive 3083, allows senior security officers to wear beards of up to one inch. *Id.* ¶ 47. DOCCS has permitted other officers to wear one-inch beards as well. For instance, on November 2, 2020, in an effort to "boost morale," DOCCS announced a policy allowing staff to wear one-inch beards without seeking any accommodation as a part of "No Shave November." *Id.* ¶ 50. The following year, on November 23, 2021, DOCCS announced a policy permitting all uniformed staff who would be fully vaccinated for COVID-19 by January 1, 2022 to wear a one-inch beard without seeking an accommodation. *Id.* ¶ 51. According to the Complaint, moreover, "numerous" corrections officers are allowed to wear beards as long as three to four inches. *Id.* ¶ 48.

On October 6, 2021, Talukder filed a charge of discrimination with the EEOC, *id.* ¶ 9, and on December 16, 2021, the EEOC issued notice of right to sue pursuant to Title VII of the Civil Rights Act of 1964, *id.* ¶ 53.

### THE *SUGHRIM* ACTION

On August 26, 2019, New York State corrections officers Brian Sughrim and David Feliciano filed the original complaint in *Sughrim v. State of New York, et al.*, No. 19-cv-7977 (S.D.N.Y.), alleging that DOCCS denied them religious accommodations to wear beards in contravention of their federal and state constitutional and statutory rights.[1] On December 6, 2019, the Court entered an order on consent of the parties in which DOCCS and Commissioner Annucci, acting in his official capacity, agreed "not to retaliate against any corrections officer for requesting

---

[1] The complaint in *Sughrim* was subsequently amended and corrections officers Derek Gleixner, Khaldoun Alshamiri and Roland Sofo were added as plaintiffs.

to wear a beard for religious reasons." *Sughrim*, 19-cv-7977, Dkt. 72 ("Consent Order"). That Order remains in place.

On November 30, 2020, the Court granted in part and denied in part the *Sughrim* defendants' motion to dismiss the third amended complaint. *Sughrim*, 503 F. Supp. 3d 68. Specifically, the Court granted the motion to dismiss the *Sughrim* plaintiffs' Section 1983 claims for damages against two individual DOCCS officials, *id.* at 92, as well as the claims of two individual plaintiffs who had failed to exhaust their administrative remedies, *id.* at 95–96, but denied the motion with respect to the remaining constitutional and statutory claims.

In its opinion, the Court reached several conclusions relevant to the instant motion. First, it found that the *Sughrim* plaintiffs plausibly alleged that DOCCS's grooming policy is not neutral in application or generally applicable because DOCCS denies religious accommodation requests to wear beards while allowing numerous corrections officers to wear beards for secular reasons. *Id.* at 89. Second, the Court concluded that Directive 3083, which sets forth DOCCS's grooming policy and requires all officers appointed after 1990 to be clean-shaven, is not narrowly tailored to advance DOCCS's goal of ensuring that enough officers are able to wear respirators at any given facility. *Id.* at 90. The Court based that conclusion in part on allegations that only a limited number of corrections officers are assigned to "clean-shaven posts" in the course of their duties. *Id.* Third, it found the *Sughrim* plaintiffs plausibly alleged that several of the individual defendants were personally involved in implementing DOCCS's grooming policy, including by denying religious accommodations while permitting numerous officers to wear beards for secular reasons. *Id.* at 93–94. As a result, the Court held that the plaintiffs had plausibly alleged constitutional violations under the First and Fourteenth Amendments for injunctive and declaratory relief and for damages

pursuant to Section 1983, as well as violations of Title VII for damages and injunctive and declaratory relief.

After fact discovery in *Sughrim*, the plaintiffs moved for partial summary judgment, seeking declaratory and injunctive relief on their constitutional and statutory claims. That motion is currently pending before the Court.

## PROCEDURAL BACKGROUND

Talukder initiated this action on February 22, 2022, alleging violations of the First and Fourteenth Amendments and Title VII, and incorporating by reference the factual allegations in *Sughrim*. Compl. ¶ 2. After Talukder filed the First Amended Complaint, Defendants filed the instant motion to dismiss.

On March 8, 2022, the Court ordered the parties to submit a joint letter stating their positions as to whether the Consent Order in *Sughrim* should be modified to include corrections officer trainees. In a letter filed on July 6, 2022, Talukder requested that the Court modify the *Sughrim* Consent Order to include corrections officer trainees, but Defendants objected to any order allowing Talukder to begin training with a three-inch beard. On July 11, 2022, the Court referred the dispute regarding modification of the *Sughrim* Consent Order to Magistrate Judge Aaron, and on November 18, 2022, Judge Aaron issued a Report and Recommendation (the "Report") recommending that the Court (1) deny Talukder's motion to extend the Consent Order, and (2) deny his motion in the alternative for a preliminary injunction reinstating him as a corrections officer trainee. Talukder timely objected to the Report.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[2] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion, the question is "not whether [the plaintiff] will ultimately prevail," but "whether [her] complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011). In answering this question, the Court must "accept[ ] all factual allegations as true, but giv[e] no effect to legal conclusions couched as factual allegations." *Stadnick*, 861 F.3d at 35.

## DISCUSSION

Talukder brings three categories of claims: (1) claims against the State Officials in their official capacities for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments; (2) claims against Defendant Ghatt in her individual capacity for damages pursuant to 42 U.S.C. § 1983; and (3) claims against the State of New York and DOCCS for damages, injunctive relief, and declaratory relief for violations of Title VII.

Drawing on its reasoning in its opinion in *Sughrim*, the Court first concludes that Talukder has plausibly alleged a constitutional violation under the Free Exercise Clause of the First Amendment; second, that Defendant Ghatt has not, at this early stage in the litigation, established that she is entitled to qualified immunity on Talukder's Section 1983 claims; and finally, that Talukder has plausibly alleged Title VII claims for failure to accommodate and disparate treatment, but not for retaliation.

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

I.       **Section 1983 Claims for Declaratory and Injunctive Relief**

Defendants argue that Talukder has not plausibly alleged that he is entitled to declaratory and injunctive relief pursuant to Section 1983 because he "fails to allege any constitutional violation." Defs. Mot. at 14. The Court disagrees, and finds that Talukder has stated a claim for violations of the First Amendment against the State Officials, in addition to having plausibly alleged he is entitled to injunctive and declaratory relief.

The Free Exercise Clause of the First Amendment, applied against the states by incorporation through the Fourteenth Amendment, forbids the enactment of laws that "prohibit[ ] the free exercise of religion." U.S. Const., amend. I. In *Employment Division, Department of Human Resources of Oregon v. Smith*, the Supreme Court made clear that not all laws burden an individual's exercise of religion, explaining that the Free Exercise Clause "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability." 494 U.S. 872, 879 (1990). A law is not generally applicable, however, "if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions," or "if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton v. City of Phila., Pa.*, 141 S. Ct. 1868, 1877 (2021). A law that is not generally applicable must be justified by a compelling interest and narrowly tailored to advance that interest. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532–33 (1993).

In *Sughrim*, the Court concluded that the plaintiffs plausibly alleged that DOCCS's grooming policy is neither neutral in application nor generally applicable because DOCCS selectively applies Directive 3083 to prohibit some officers from maintaining beards for religious reasons, while simultaneously allowing other officers to wear beards for secular reasons. 503 F. Supp. 3d at 89. Although the defendants in *Sughrim* attempted to justify DOCCS's grooming

policy by pointing to the need to have clean-shaven officers on staff able to wear a close-fitting respirator, the Court found that the plaintiffs had adequately pled that the grooming policy is not narrowly tailored to serve its interest in ensuring that a sufficient number of respirator-eligible officers are on duty. *Id.* at 89–90. The Court explained that three relevant facts alleged in the complaint supported that conclusion: "(1) DOCCS does not conduct annual respirator-fit tests on all of its correction officers, (2) the number of clean-shaven posts in each facility is limited, and (3) DOCCS maintains only a limited number of respirators." *Id.* at 90. Because DOCCS could accomplish its stated goal through less discriminatory means, the Court found that the plaintiffs had plausibly alleged its facial hair policy is not narrowly tailored. The Court posited that "[i]nstead of requiring that all DOCCS officers be clean-shaven, Defendants could ensure that at any given moment, there are at least as many respirator-eligible officers on duty at each facility as there are available respirators." *Id.* As a result, the Court concluded that the plaintiffs had adequately pled a violation of the Free Exercise Clause.

A similar analysis applies here. As the Complaint makes clear and DOCCS acknowledges, DOCCS allows numerous uniformed staff to grow beards for secular reasons, while simultaneously denying trainees the same accommodation on religious grounds. For example, Talukder alleges that DOCCS allowed staff to wear one-inch beards without seeking any accommodation as part of "No Shave November," and that uniformed staff vaccinated for COVID-19 were permitted to wear beards without seeking an accommodation. Compl. ¶¶ 50, 51. Additionally, according to the Complaint, even while Talukder's religious accommodation request was denied, "numerous" corrections officers were purportedly permitted to wear beards three to four inches long. *Id.* ¶ 48. As explained in *Sughrim*, "where the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of religious hardship

without compelling reason." *Smith*, 494 U.S. at 884; *see Cent. Rabbinical Cong. of U.S. & Canada v. New York City Dep't of Health & Mental Hygiene*, 763 F.3d 183, 197 (2d Cir. 2014) (explaining that a law that "regulates religious conduct while failing to regulate secular conduct that is at least as harmful to the legitimate government interests purportedly justifying it" is not generally applicable and subject to strict scrutiny). Taking the facts alleged in the Complaint as true, DOCCS applies its grooming policy in a manner that burdens conduct motivated by religious belief while permitting the same conduct on secular grounds. *See, e.g., Litzman v. NYPD*, 2013 WL 6049066, at *3 (S.D.N.Y. Nov. 15, 2013) (applying strict scrutiny due to "evidence that the NYPD exercises discretion with respect to a facially neutral rule in a discriminatory fashion" where "de facto exemptions to the [policy] abound" and "the NYPD does not always enforce its personal appearance standards"). As such, the DOCCS policy must be justified by a compelling interest and narrowly tailored to advance that interest. *See Lukumi*, 508 U.S. at 546.

Defendants argue that the Court's reasoning in *Sughrim* is inapposite here. According to Defendants, DOCCS maintains a "blanket prohibition" on *trainees*' facial hair, Defs. Mot. at 8, and "prohibits all Trainees from wearing beards longer than 1/8 inch in length," *id.* at 15. They insist that a blanket prohibition is necessary because all trainees must pass a "respirator fit test" to become a certified corrections officer. *Id.* at 1. Consequently, Defendants argue, DOCCS cannot grant Talukder the same accommodation it offers corrections officers.

The Court is not persuaded. The justification that Defendants proffer for the ban—that "all trainees must pass a respirator fit test and applicable respirator training to become certified correctional officers," Defs. Mot. at 1–2—raises a fact-intensive inquiry that fails to justify dismissal at this stage. The Complaint raises a plausible inference that a policy requiring all trainees to be clean-shaven or wear facial hair no longer than 1/8 of an inch in order to pass a

respiratory fit-test is not narrowly tailored to advance the goal of preparing trainees to become corrections officers—particularly given that many of those officers will never have to wear a respirator at all. Discovery may well yield facts justifying Defendants' grooming policy and the distinction between the policy for trainees and corrections officers. But because the facts alleged in the Complaint support the assertion that DOCCS's grooming policy is not narrowly tailored to advance any compelling interest, Talukder has plausibly alleged a violation of the Free Exercise Clause.

The Court's conclusion here is further reinforced by a practical consideration: a blanket prohibition on religious beards longer than 1/8 of an inch at the Training Academy may serve as a *de facto* bar to prospective corrections officers who require a religious accommodation to graduate from, or even participate in, training. Absent a more narrowly tailored grooming policy, DOCCS's policy as applied to trainees prevents all prospective corrections officers with religious beliefs that mandate beards longer than 1/8 of an inch from becoming corrections officers.

Having found that Talukder has plausibly alleged a violation of his First Amendment rights, the Court also concludes that he may seek declaratory and injunctive relief against the State Officials in their official capacities. "[U]nder the venerable doctrine of *Ex parte Young*, a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective injunctive relief from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007). Like the plaintiffs in *Sughrim*, Talukder has plausibly alleged that the individual officials have the authority to provide the relief that he seeks. *See Sughrim*, 503 F. Supp. 3d at 91–92; *Ross v. State of New York*, 2016 WL 626561, at *4 (S.D.N.Y. Feb. 16, 2016) (explaining that plaintiffs "can rely on *Ex parte Young* only if the officials [they] sue[] have the authority to provide the requested relief"). The Complaint asserts that Defendant

Annucci has "final decision-making authority for DOCCS," Compl. ¶ 18, and that Defendant Ghatt denied Talukder's request for a religious accommodation and instructed him to shave his beard, *id* ¶ 32. Given that the Complaint indicates that the State Officials both have control over DOCCS's policy and/or requests for accommodations, the Court agrees with Talukder that it would be premature to dismiss his Section 1983 claims for declaratory and injunctive relief prior to fact discovery. Accordingly, Defendants' motion to dismiss Talukder's Section 1983 claims for injunctive and declaratory relief is denied.

## II.    Section 1983 Claim for Damages Against Defendant Ghatt

Defendants next argue that Acting Director Ghatt is entitled to qualified immunity from Talukder's Section 1983 claim for damages. At this early stage in the litigation, the Court disagrees.

"A defendant is entitled to qualified immunity if (1) [the defendant's] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for [the defendant] to believe that his actions were lawful at the time of the challenged act." *Brandon v. Kinter*, 938 F.3d 21, 39 (2d Cir. 2019).

The Second Circuit has explained, however, that "advancing qualified immunity as grounds for a motion to dismiss is almost always a procedural mismatch." *Sabir v. Williams*, 52 F.4th 51, 64 (2d Cir. 2022); *see also Chamberlain Est. of Chamberlain v. City of White Plains*, 960 F.3d 100, 111 (2d Cir. 2020) (noting that "a qualified immunity defense presented on a Rule 12(b)(6) motion faces a formidable hurdle ... and is usually not successful"). "Although it is possible for a qualified immunity defense to succeed on a motion to dismiss," *Sabir*, 52 F.4th at 64 (citing *Liberian Cmty. Ass'n of Conn. v. Lamont*, 970 F.3d 174, 186 (2d Cir. 2020)), "as a

general rule, the defense of qualified immunity cannot support the grant of a 12(b)(6) motion," *Chamberlain*, 960 F.3d at 110.

Thus, "[a]lthough the facts at trial" or obtained prior to summary judgment might weigh in favor of finding that Defendants are entitled to qualified immunity, they "chose to press their qualified immunity defense at the pleadings stage, and they therefore must face the 'more stringent standard applicable to this procedural route.'" *Sabir*, 52 F.4th at 63 (quoting *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)). Specifically, "the facts supporting the defense [must] appear on the face of the complaint, or in its attachments and documents incorporated by reference." *Id.* at 64; *see also DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). On a motion to dismiss, plaintiffs are "entitled to all reasonable inferences from the facts alleged, not only those that support [their] claim, but also those that defeat the immunity defense." *McKenna*, 386 F.3d at 436. Like in *Sughrim*, 503 F. Supp. 3d at 93, the Court thus finds that Defendant Ghatt is not entitled to qualified immunity at this time.

### III.   Title VII Claims

With respect to Title VII, Defendants argue that Talukder's failure-to-accommodate claim is barred by the doctrine of sovereign immunity, and that he has failed to plausibly allege failure-to-accommodate, disparate treatment, or retaliation claims. The Court addresses each argument in turn.

#### A. Talukder's Title VII Accommodation Claim is Not Barred by the Eleventh Amendment

First, Defendants argue that the Eleventh Amendment bars Title VII failure-to-accommodate claims. The Court considered, and rejected, an identical argument in *Sughrim*, relying in part on *Leifer v. New York State Div. of Parole*, 391 F. App'x 32, 33–34 (2d Cir. 2010), where the Second Circuit reached the merits of a Title VII religious accommodation claim against

13

a New York State agency. *Sughrim*, 503 F. Supp. 3d at 94. The Court reaches the same conclusion here.

### B.  Talukder Plausibly Alleges a Title VII Claim for Denial of Reasonable Accommodation

To state a failure-to-accommodate claim under Title VII, a plaintiff must allege that "(1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; . . . (3) they were disciplined for failure to comply with the conflicting employment requirement;" and they were not offered a reasonable accommodation. *Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006).

Talukder has pleaded each of those elements. He alleges that he is a Sunni Muslim who wears a three-inch beard consistent with his faith, Compl. ¶¶ 22–23; that he sought an accommodation to wear a three-inch beard, *id*. ¶ 31; that he was denied the accommodation to wear the three-inch beard, *id*. ¶ 32; and that he was not permitted to participate in the training program unless he agreed to trim his beard, *id*. ¶¶ 29, 45.

Defendants nonetheless argue that Talukder fails to state a failure-to-accommodate claim because he does not allege he faced "any disciplinary action," and because he "fails to allege that any other Trainee received an accommodation to wear a beard of any length." Defs. Mot. at 7. Defendants also contend that Talukder was in fact granted an accommodation when he was permitted to wear a 1/8-inch beard. Defendants' arguments are unpersuasive.

First, the Complaint asserts that Talukder was "disciplined" when DOCCS denied him the opportunity to continue with his training after he refused to trim his beard. Compl. ¶¶ 27, 29, 45. Although "[t]he Second Circuit has never defined 'discipline' within the context of the three-pronged religious discrimination test," courts have "equated discipline with an adverse employment action." *Chavis v. Wal-Mart Stores, Inc.*, 265 F. Supp. 3d 391, 399 (S.D.N.Y. 2017)

(citing *Siddiqi v. N.Y. City Health & Hosp. Corp.*, 572 F.Supp.2d 353, 370 (S.D.N.Y.2008)); *see Chavis*, 12 F. Supp. 3d at 443 (explaining that an adverse employment action includes "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities"); *see also E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 772 n.2 (2015) (noting that "[f]ailing to hire" because of a plaintiff's religious practice "is synonymous with refusing to accommodate the religious practice"); *Baker*, 445 F.3d at 547 (concluding that plaintiff raised triable issue of fact where he claimed he was "disciplined, i.e., fired" for failing to comply with requirement that he work on Sunday). Talukder's allegation that he was barred from attending the Academy because of the length of his beard is sufficient to plead that he was disciplined for failing to comply with an employment requirement.

Second, it is immaterial for the purposes of Talukder's failure-to-accommodate claim that other trainees are not alleged to have requested or received religious accommodations to wear beards. Defendants cite no cases in support of their assertion that Talukder must allege that other trainees received accommodations in order to state an accommodation claim, nor is there such a requirement in Title VII. *See Baker* 445 F.3d at 546 (discussing denial-of-accommodation factors); *see generally Abercrombie & Fitch Stores*, 575 U.S. at 775 (explaining that employers cannot refuse to hire an applicant "due to an otherwise-neutral policy" and that "Title VII requires otherwise-neutral policies to give way to the need for an accommodation").

Finally, Defendants' suggestion that permitting Talukder to maintain a 1/8-inch beard satisfied his request for an accommodation is also without merit, because that allowance does not resolve the conflict between Talukder's religious beliefs and DOCCS's requirements. *See, e.g., Baker*, 445 F.3d at 547–48 (finding that employer's offer to schedule employee to work in the

afternoon or evenings on Sundays, rather than the mornings, was not a "reasonable" accommodation under Title VII where employee's religious views required not only attending Sunday church services but refraining from work on Sundays altogether). Accordingly, Talukder's accommodation claim may proceed.

### C.  Talukder Plausibly Alleges a Title VII Disparate Treatment Claim

To state a disparate treatment claim under Title VII, "a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). At the motion to dismiss stage, a plaintiff need not provide "substantial evidence of discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). Rather, a plaintiff may plead facts "that indirectly show discrimination by giving rise to a plausible inference of discrimination," *Vega*, 801 F.3d at 87, including by showing that similarly situated individuals received preferential treatment, *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997).

Talukder asserts that he was unlawfully denied the opportunity to become a corrections officer when he was excluded from the Training Academy because of the length of the beard he kept for religious reasons, even while numerous corrections officers were permitted to wear beards during their employment. Defendants argue that Talukder "falsely conflate[s] Trainees with correctional officers," and thus fails to plead that individuals similarly situated to Talukder received preferential treatment. Defs. Reply at 5. As discussed above, however, at this early stage in the litigation, the Court finds that Talukder has the better argument.

"Ordinarily, the question whether two employees are similarly situated is a question of fact for the jury." *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (concluding that officers

and promoted officers were similarly situated). To survive a motion to dismiss, a plaintiff need only allege facts making it "plausible that a jury could ultimately determine that the comparators are similarly situated." *Miller-Sethi v. City Univ. of New York*, 2023 WL 419277, at *4 (S.D.N.Y. Jan. 26, 2023) (quoting *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 698 (S.D.N.Y. 2011)). As the Second Circuit has instructed, the analysis turns on whether the plaintiff "shared sufficient employment characteristics with [a] comparator so that they could be considered similarly situated." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001); *see also id.* (noting that a plaintiff "is not obligated to show disparate treatment of an *identically* situated employee").

Given that corrections officer trainees often graduate into positions as DOCCS officers, the Court concludes that it is reasonable to compare the grooming requirements of trainees with those of corrections officers at the pleading stage. Talukder alleges he was a corrections officer trainee who "attempted to receive training to become a corrections officer," and although he was denied a religious accommodation to wear a beard, numerous corrections officers are permitted to wear beards after graduating from the Training Academy. Pl. Opp. at 21. Drawing all reasonable inferences in Talukder's favor, he has plausibly alleged that he was treated less favorably than similarly situated DOCCS staff who were permitted to wear beards for secular reasons. *See Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (concluding that plaintiff plausibly alleged that employees were similarly situated where comparator employees worked in rotational roles and were normally employed by parent company); *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 476 (S.D.N.Y. 2011) (concluding that employees were similarly situated though it was "undisputed" one was higher-ranked). *But see Johnson v. Schmid*, 750 Fed. App'x. 12, 17 (2d Cir. 2018) (affirming district court's conclusion, on summary judgment, that a trainee social

worker was not similarly situated to his training supervisors where record showed he was denied full position based on his poor performance).

Defendants further argue that DOCCS's denial of Talukder's request for an accommodation was justified because it "maintains a blanket prohibition on Trainee facial hair beyond the length of 1/8 inch." Defs. Mot. at 8. As discussed above, Defendants may establish at summary judgment or trial that trainees are justifiably subjected to different standards requiring that they maintain facial hair no longer than 1/8 of an inch. But that they may ultimately offer "non-pretextual, non-discriminatory explanations" for their employment decisions "is not properly decided on a motion to dismiss for failure to state a claim." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014). Accordingly, because the allegations in the Complaint raise a plausible inference that Talukder was similarly situated to DOCCS staff who were permitted to wear beards for secular reasons, his Title VII disparate treatment claim survives the motion to dismiss.[3]

### D.  Talukder Fails to Plausibly Allege a Title VII Retaliation Claim

Lastly, in contrast to his other claims, Talukder's retaliation claim must be dismissed, because he fails to allege that DOCCS excluded him from the Training Academy because he engaged in protected activity under Title VII.

To state a claim for retaliation in violation of Title VII, Talukder would need to "plead facts that would tend to show that: (1) [he] participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging [him]; and (3) there exists

---

[3] Defendants also argue that Talukder "fails to plausibly allege a pattern and practice of discrimination claim." Defs. Mot at 8–9. But Talukder does not expressly bring a cause of action under that theory, *see* Compl. at 10–14, and the Second Circuit has held that "pattern-or-practice" refers "to a method of proof and does not constitute a freestanding cause of action" under Title VII. *Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483, 487 (2d Cir. 2013); *see also Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 355 (5th Cir.2001) ("A pattern or practice case is not a separate and free-standing cause of action ... but is really merely another method by which disparate treatment can be shown."). Accordingly, the Court only addresses Defendants' motion as it pertains to Talukder's disparate treatment, retaliation, and accommodation claims.

a causal connection between the protected activity and the adverse action." *Patane v. Clark,* 508 F.3d 106, 115 (2d Cir. 2007). "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination," and may include requests for a reasonable accommodation. *Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 331 (S.D.N.Y. 2020) (citing *Jenkins v. N.Y.C. Transit Auth.*, 646 F. Supp. 2d 464, 473 (S.D.N.Y. 2009)). A causal connection between the protected activity and the retaliation can be established "indirectly by showing that the protected activity was closely followed in time by the adverse employment action." *Bucalo v. Shelter Is. Union Free Sch. Dist.*, 691 F.3d 119, 131 (2d Cir. 2012).

Talukder contends that he was excluded from the Training Academy because he requested an accommodation to wear a beard, but the facts alleged in the Complaint do not support that assertion. According to the Complaint, on August 1, 2021, the day Talukder arrived at the Training Academy, Defendant Ghatt informed him that if he failed to trim his beard, he would not be able to enter the Academy. Compl. ¶ 29. Not until August 2, 2021—the day after his discussion with Defendant Ghatt in which she informed him that he would be excluded for wearing a beard longer than 1/8 of an inch—did Talukder file a reasonable accommodation request. *Id.* ¶ 31. The Complaint therefore fails to plausibly allege that he was denied entrance into the academy *because* he sought an accommodation. *See, e.g., Arrocha v. City Univ. of New York*, 878 F. Supp. 2d 364, 372 (E.D.N.Y. 2012), *aff'd*, 523 F. App'x 66 (2d Cir. 2013) (dismissing retaliation claim because "there is no possibility of a causal connection between [plaintiff's] complaints of discrimination to [defendant] and the [adverse employment action] because [plaintiff] made those complaints only after" the adverse action); *Pinero v. Long Is. State Veterans Home*, 375 F. Supp. 2d 162, 168 (E.D.N.Y. 2005) ("[T]he problem with the Plaintiff's retaliation claim is that she was informed that her contract would not be renewed prior to the filing of any administrative complaint."); *c.f.*

*Sughrim*, 503 F. Supp. 3d at 79–86, 98 (finding that plaintiffs who were suspended after they requested religious accommodations stated Title VII retaliation claims).

Talukder further alleges that he "continues to be denied employment at DOCCS's Training Academy because of his requested accommodation." Compl. ¶ 43. But even assuming that the Training Academy's refusal to allow him to return constitutes an ongoing adverse employment action rather than a single discrete act, the Complaint alleges that Defendants first denied him the right to continue at the Academy on August 1, 2021. As the Second Circuit has made clear, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001), *as amended* (June 6, 2001) (finding no causal nexus in retaliation claim where employer began to reduce plaintiff's job responsibilities five months before he engaged in protected activity but ultimately fired him after he filed an EEOC complaint). Thus, while the Complaint plausibly alleges that Talukder was excluded from the Training Academy because he wore a beard for religious reasons, it does not allege that he was excluded because he sought an accommodation to wear that beard. *See Vega*, 801 F.3d at 90 (explaining that "for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action").

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is granted as to Talukder's Title VII retaliation claim, but denied in all other respects. The Clerk of Court is respectfully directed to terminate the gavels pending at docket entries 42 and 52. No later than 30 days from this order, the parties shall file a letter proposing next steps in this action.

SO ORDERED.

Dated:      March 31, 2023
            New York, New York

_____
Ronnie Abrams
United States District Judge