UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

M.D. A. TALUKDER,

                                    Plaintiff,

                    v.

STATE OF NEW YORK, NEW YORK STATE
DEPARTMENT OF CORRECTIONS AND
COMMUNITY SUPERVISION, ANTHONY J.
ANNUCCI, and KIM GHATT,

                                    Defendants.

---

22-CV-1452 (RA)

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff M.D. A. Talukder, a Muslim man seeking to become a New York State Department of Corrections and Community Supervision ("DOCCS") officer, brings this action against Defendants State of New York, DOCCS, and two individuals, DOCCS Acting Commissioner Anthony J. Annucci and Kim Ghatt, the Acting Director of the DOCCS Training Academy (the "State Officials"). Talukder alleges violations of the First and Fourteenth Amendments to the U.S. Constitution, pursuant to 42 U.S.C. § 1983, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, asserting that Defendants refused to allow him to serve as a trainee corrections officer after he declined to shave his beard consistent with his Muslim faith.[1]

Shortly after Talukder initiated this lawsuit, he requested that the Court extend the protections of an order issued in a pending related matter involving substantially similar claims to

---

[1] By separate order dated March 31, 2023, the Court granted in part and denied in part Defendants' motion to dismiss Talukder's First Amended Complaint (the "Complaint").

those brought here, *Sughrim v. State of New York et al.*, 19-cv-7977 (RA) (S.D.N.Y.). In *Sughrim*, New York State corrections officers sued several of the same defendants named in this action for alleged constitutional and statutory violations regarding their right to wear beards as an expression of their religious beliefs. On December 6, 2019, this Court entered an order on consent of the *Sughrim* parties (the "Consent Order") in which DOCCS agreed not to retaliate against corrections officers for seeking a religious accommodation to wear a beard. *Sughrim*, No. 19-cv-7977, Dkt. 72.

The Consent Order—which is still in effect—does not apply to Talukder, because he was never able to begin training at the DOCCS Training Academy and never became a corrections officer. Talukder seeks an extension of the Consent Order that would allow him to attend the Training Academy as a corrections officer trainee with his beard, or in the alternative, a preliminary injunction providing the same relief.

Pending before the Court is Judge Aaron's Report and Recommendation recommending that the Court (1) deny Talukder's request that the protections in the Consent Order issued in *Sughrim* be extended, and (2) deny Talukder's motion in the alternative for a preliminary injunction. *See* Dkt. 72 (the "Report"). For the reasons that follow, the Court adopts Judge Aaron's Report in full.

**BACKGROUND**

The Court assumes the parties' familiarity with the facts as outlined in detail in the Report, and restates the procedural history here only insofar as it is relevant to the instant motion.[2]

I.      **Factual Background**

Talukder, a Sunni Muslim who wears a three-inch beard consistent with his religious beliefs, arrived at the DOCCS Training Academy in Albany, New York, on August 1, 2021 with the goal of becoming a corrections officer. Compl. ¶¶ 22–24. Upon his arrival at the Academy, Talukder was told he could not receive an ID card because of his beard, and that he would not be permitted to enter the Academy unless he trimmed it to a length of 1/8 of an inch. *Id.* ¶¶ 26–30.

On August 2, 2021, Talukder submitted a request for a religious accommodation to wear a three-inch beard. *Id.* ¶ 31. On August 12, the Training Academy's acting director, Kim Ghatt, denied that request, stating in an email that his beard "will be kept at a length of no longer than 1/8 inch." *Id.* ¶ 32. Unwilling to accept that requirement, Talukder has been barred from attending the Training Academy and has not returned since. *Id.* ¶¶ 35, 45.

As is relevant here, Talukder asserts that "he was employed by DOCCS as a corrections officer trainee."  Dkt. 63 ("Talukder Declaration") ¶ 4. With his motion, he submits a letter from DOCCS advising him that he had "been offered a probationary appointment as a Corrections Officer Trainee" and that "[w]hile in the Academy, as a Correction Officer Trainee Recruit" he would "be considered to be a Central Office employee." *Id.,* Ex. 1. He signed this letter, acknowledging that he would "act in accordance with the policy and requirements of [the] DOCCS Employee Manual," on July 16, 2021. *Id*. However, since he was "barred from attending the Academy," Talukder Decl. ¶ 18, he now seeks to do so, *id.* ¶ 3.

_____

[2] The facts in this section and throughout are taken from Talukder's Complaint, as well as the parties' briefs and declarations.

## II.     The *Sughrim* Action

In *Sughrim v. State of New York*, 19-cv-7977 (RA) (S.D.N.Y.), DOCCS officers brought

claims against the State of New York, DOCCS, and DOCCS officials alleging violations of their

constitutional and statutory rights when they were denied religious accommodations to wear

beards in accordance with their religious faiths. The Court's Consent Order in that case, entered

on December 6, 2019, states the following:

> On the consent of the parties, during the pendency of this action, Defendant New
> York State Department of Corrections and Community Supervision (NYS DOCCS)
> and Defendant Annucci, acting in his official capacity, agree not to retaliate against
> any corrections officer for requesting to wear a beard for religious reasons. In
> addition, [Defendants] agree that pending the Court's ruling in Plaintiffs' motion
> for a preliminary injunction, any corrections officer may maintain a beard if the
> officer: 1) has filed a declaration in this action, or 2) has a pending religious
> accommodation request and is not assigned to a clean shaven post and does not
> regularly swap with an officer assigned to a clean shaven post.

*Sughrim*, 19-cv-7977, Dkt. 72. On November 30, 2020, this Court granted the defendants' motion

to dismiss in part, but allowed the majority of the *Sughrim* plaintiffs' claims to proceed. *Sughrim*

*v. New York*, 503 F. Supp. 3d 68 (S.D.N.Y. 2020).

On July 15, 2022, the *Sughrim* plaintiffs moved to certify a declaratory-injunctive class

consisting of "DOCCS security staff whose religious accommodation requests to wear beards were

not granted after August 26, 2016, and all DOCCS security staff who will in the future submit

requests for religious accommodations to wear beards," as well as a subclass of officers who were

"denied religious accommodations based on DOCCS's policy of determining the tenets or

requirements of some religions, but not others." *Sughrim*, No. 19-cv-7977, Dkt. 266 at 24. The

Court referred the motion for class certification to Judge Aaron, who subsequently issued a report

and recommendation recommending that the Court grant the motion for class certification but deny

the motion to certify the subclass. The *Sughrim* defendants' objections to that report are currently pending.

### III.      Talukder's Request to Extend the Consent Order

On July 6, 2022, pursuant to an order of this Court, the parties in this action submitted a joint letter stating their positions as to whether the Consent Order entered in *Sughrim* should be modified to include trainee corrections officers. In the letter, Talukder stated that he sought a modification to the Consent Order to "include corrections officer trainees," or, in the alternative, a "separate order" that "would allow [him] to continue at the Academy." Defendants, however, objected to "any order requiring DOCCS to allow Plaintiff to begin training to become a corrections officer while maintaining a three-inch beard." On July 11, 2022, the Court referred the dispute regarding the modification of the Consent Order to Magistrate Judge Aaron. Talukder subsequently moved for an extension of the consent decree, or in the alternative, a preliminary injunction.

On November 18, 2022, Judge Aaron issued his Report recommending that the Court deny Talukder's request in full. In the Report, Judge Aaron first concluded that Talukder is not entitled to an extension of the Consent Order because "he is not currently … subject to any DOCCS rules or regulations," and thus not seeking a "preservation of the status quo … but to be granted now the ultimate relief he seeks." Report at 6. Judge Aaron further recommended denying Talukder's application for preliminary injunctive relief allowing him to begin at the Academy with a three-inch beard because he is not currently an employee of DOCCS and has not demonstrated he would be irreparably harmed in the absence of an injunction. Report at 6–11.

Talukder timely filed objections to the Report, to which Defendants timely responded.

## STANDARD OF REVIEW

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). In doing so, it may "adopt those portions of the recommendation to which 'specific, written objection' is made, as long as those sections are not clearly erroneous." *Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 513 (S.D.N.Y. 1997) (quoting Fed. R. Civ. P. 72(b)). "A magistrate judge's decision is clearly erroneous only if the district court is left with the definite and firm conviction that a mistake has been committed." *Stenson v. Heath*, 2015 WL 3826596, at *2 (S.D.N.Y. 2015).[3] A court must, by contrast, undertake a *de novo* review of those portions of a report to which specific objections have been made. *See* 28 U.S.C. § 636(b)(1)(C); *Greene*, 956 F. Supp. At 513.

## DISCUSSION

### I.   Judge Aaron Correctly Concluded that Talukder is Not Currently a DOCCS Employee

First, Talukder objects to Judge Aaron's conclusion that he is not a DOCCS employee, asserting that "[t]he record is clear" that "as a Corrections Officer Trainee, [he] is a DOCCS employee." He further argues that because he "is" a DOCCS employee, he is a member of the putative *Sughrim* class, and that he is therefore entitled to an extension of the *Sughrim* Consent Order. The Court disagrees.

The Second Circuit applies a two-part test in determining whether an individual is an employee, as defined by Title VII. First, a plaintiff "must show [he] was hired by the putative employer by establishing that [he] received remuneration for the work [he] performed." *Ayyaz v.*

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

*City of New York*, 2021 WL 1225684, at *5 (S.D.N.Y. Mar. 31, 2021) (quoting *United States v. City of New York*, 359 F.3d 83, 91–92 (2d Cir. 2004)). If a plaintiff establishes he was hired, the court then considers factors that "indicate the existence of an employer-employee relationship under the common law," which include:

> [T]he hiring party's right to control the manner and means by which the product is accomplished ....[;] the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in the business; the provision of employee benefits; and the tax treatment of the hired party.

*Felder v. United States Tennis Ass'n*, 27 F.4th 834, 843 (2d Cir. 2022) (quoting *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751–52 (1989).

Talukder argues that he satisfies the relevant indicia of employment. He points to a letter from DOCCS that he signed, indicating that he accepted an offer of employment as a trainee on July 16, 2021 entitling him to a starting annual salary of $43,937. Dkt. 68-7. The letter reads: "You are hereby offered a probationary appointment as a CORRECTION OFFICER TRAINEE with the New York State Department of Corrections and Community Supervision […]." *Id.* He also asserts that DOCCS "had authority to assign … tasks to [him] as necessary, had discretion over his daily hours and tasks involved, controlled the method of payment, and involved trainees in tasks that are part of the regular business of DOCCS." Pl. Obj. at 7.

Although there is no dispute that DOCCS offered Talukder employment in July 2021 to become a corrections officer trainee, it is also abundantly clear that he is not currently a DOCCS employee. As the Complaint alleges, due to his refusal to trim his beard, he has been excluded from the Training Academy since August 2021 and has not received any pay or benefits from

DOCCS. Compl. ¶¶ 26, 45; Talukder Decl. ¶ 19. Talukder does not allege that he currently works under DOCCS's control, that he is treated for tax purposes as a DOCCS employee, or that he has any ongoing relationship with DOCCS whatsoever. Indeed, in his declaration, Talukder states that "I *was* employed by DOCCS as a corrections officer trainee," *id*. ¶ 4 (emphasis added), and that "I seek to attend" the DOCCS Training Academy, *id*. ¶ 3. He further declares "I have not received any pay" since "I have been barred from attending the Academy," *id.* ¶ 18, and that he "continue[s] to be denied access to the Academy in my role as Corrections Officer Trainee," *id*. ¶ 20. Judge Aaron correctly declined to modify the Consent Order to cover Talukder. As the Complaint itself makes clear, "the *Sughrim* temporary restraining order applies only to 'corrections officers' and not to trainees like Mr. Talukder." Compl. ¶ 41. Applying the Consent Order's protections to Talukder would contravene its terms, a step the Court is unwilling to take absent the parties' assent. *See Perez v. Danbury Hosp.,* 347 F.3d 419, 424 (2d Cir. 2003) ("[C]ourts must abide by the express terms of a consent decree and may not impose additional requirements or supplementary obligations on the parties even to fulfill the purposes of the decree more effectively."). Given that the Court entered the Order on consent of the parties, the Court shares Judge Aaron's reluctance to alter the parties' agreement "regardless of the discretion to do so." Report at 6; *see, e.g., Johnson & Johnson v. S. Pointe Wholesale, Inc.*, 2010 WL 11627390, at *2 (E.D.N.Y. Dec. 23, 2010) (explaining that "amendment of consent decrees or orders is not favored").

## II.    Judge Aaron Correctly Concluded that Talukder Fails to Demonstrate Irreparable Harm

Next, Talukder objects to Judge Aaron's conclusion that DOCCS's refusal to allow him to become a corrections officer trainee with his three-inch beard does not constitute irreparable harm,

thwarting his entitlement to preliminary injunctive relief.[4] For the following reasons, Talukder's objection is overruled.

A showing of irreparable harm is "an absolute requirement for a preliminary injunction." *Oliver v. New York State Police*, 812 F. App'x 61, 63 (2d Cir. 2020) (quoting *Holt v. Cont'l Grp.*, *Inc.*, 708 F.2d 87, 90 (2d Cir. 1983)). To show irreparable harm, "[t]he movant must demonstrate an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999). "Irreparable harm means injury for which a monetary award cannot be adequate compensation." *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995).

The Second Circuit has made clear that "irreparable harm is not [generally] established in employee discharge cases by financial distress or inability to find other employment, unless truly extraordinary circumstances are shown." *Oliver*, 812 F. App'x at 63; *see Peck v. Montefiore Med. Ctr.*, 987 F. Supp. 2d 405, 412 (S.D.N.Y. 2013) ("[T]he law is clear that a discharge from employment and the injuries that may flow therefrom … do not constitute the irreparable harm necessary to obtain a preliminary injunction."). That principle—that the loss of an employment opportunity is generally not an irreparable harm justifying a preliminary injunction reinstating a discharged employee—also extends to claims for alleged First Amendment violations. *See, e.g., Savage v. Gorski*, 850 F.2d 64, 68 (2d Cir. 1988) (holding that county employees who were allegedly terminated because of their political beliefs were not entitled to preliminary injunction

---

[4] Talukder also objects to Judge Aaron's conclusion that he must satisfy a heightened standard to obtain interim relief because the relief he seeks "is the same as the ultimate relief that he seeks and cannot be undone even if Defendants succeed at trial." Report at 8. Although the Court is inclined to agree with Judge Aaron, *see, e.g. JTH Tax, LLC v. Agnant*, 62 F.4th 658, 667 (2d Cir. 2023) (applying heightened standard where movant brought claims seeking monetary damages in addition to injunctive relief), it need not decide this issue because Talukder has failed to establish irreparable harm even applying the less-stringent standard.

because "reinstatement and money damages" can make plaintiffs "whole for any loss suffered" during a period of interim unemployment); *Shady v. Tyson*, 5 F. Supp. 2d 102, 109 (E.D.N.Y. 1998) (holding that nonrenewal of faculty appointment did not constitute irreparable harm based on chilling of First Amendment rights); *see also Piercy v. Fed. Rsrv. Bank of New York*, 2003 WL 115230, at \*4 (S.D.N.Y. Jan. 13, 2003) (stating, "[c]ourts in this Circuit have generally denied preliminary injunction motions seeking reinstatement in employment cases where the alleged irreparable harm was the chilling of First Amendment rights"); *Fondel v. Gawthrop*, No. CV 89 1822 (ERK), 1990 WL 21112, at \*5 (E.D.N.Y. Feb. 5, 1990) (explaining that, where plaintiff sought injunctive relief for failure to hire, it is "well settled in this Circuit that a preliminary injunction will not be issued" under Title VII and Section 1983 where plaintiff "has an adequate remedy at law.").

A recent Second Circuit case, *Kane v. DeBlasio*, in which the Court of Appeals considered a Free Exercise Challenge to New York City's vaccine mandate brought by public school employees, is instructive here. 19 F.4th 152 (2d Cir. 2021). The court there denied the plaintiffs' motion for a preliminary injunction reinstating their employment after they were denied religious exemptions to the City's vaccine requirement, explaining that "adverse employment consequences, like the loss of income accompanying a suspension without pay, 'are not the type of harm that usually warrants injunctive relief because economic harm resulting from employment actions is typically compensable with money damages.'" *Id.* at 171 (quoting *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 294 (2d Cir. 2021), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021)). The Circuit reasoned that because the plaintiffs were no longer employed, they were "not required to perform or abstain from any action that violates their religious beliefs." *Kane*, 19 F.4th at 172. Though the court did grant limited interim relief to the plaintiffs to have their religious

accommodation requests reconsidered by the City, it explained that it "d[id] not cast doubt on the well-established principle that loss of employment does not usually constitute irreparable injury," and that the case was "unusual" because the plaintiffs demonstrated that the City impermissibly considered whether their individual religious beliefs were consistent with those of other adherents of their faith—and, importantly, because the City had consented to the entry of the injunction. *Id.* at 170 n.18.

Insofar as Talukder seeks a preliminary injunction mandating that the he be permitted to serve as a DOCCS corrections officer trainee with a three-inch beard, he is thus ineligible for relief at this early stage in the litigation. Like the plaintiffs in *Kane*, Talukder is not employed at DOCCS. As such, he "face[]s economic harms, principally a loss of income," which are compensable with money damages. *Id.* at 172.

In objecting to Judge Aaron's Report, Talukder relies on the Supreme Court's observation in *Elrod v. Burns* that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." 427 U.S. 347, 373 (1976). In *Elrod*, however, the Court considered a First Amendment claim by then-employees who were threatened with discharge for failing to support the Democratic Party. The Court explained that "[a]t the time a preliminary injunction was sought in the District Court … many of the members of the [putative] class … were threatened with discharge or had agreed to provide support for the Democratic Party in order to avoid discharge. It is clear therefore that First Amendment interests were either threatened or in fact being impaired at the time relief was sought." *Id.*

Talukder faces no such threat of discharge. As courts distinguishing *Elrod* have explained, a difference exists between situations "in which 'a person has lost his first Amendment right and has retained his employment,' and situations in which 'a person has lost his employment but

11

retained his First Amendment rights.'" *Greer v. Mehiel*, 2016 WL 828128, at *11 (S.D.N.Y. Feb. 24, 2016) (quoting *Blum v. Schlegel*, 830 F. Supp. 712, 723 (W.D.N.Y. 1993), *aff'd*, 18 F.3d 1005 (2d Cir. 1994)). "[I]n the latter case, the damage is the loss of income, not the loss of First Amendment rights." *Greer*, 2016 WL 828128 at *11. Here, Talukder "has already lost his position" and may exercise his sincerely held religious beliefs. *Shady*, 5 F. Supp. 2d at 108. The "resulting loss of income undoubtedly harms" Talukder, "but that harm is not irreparable" for the purposes of the instant motion because he is free to continue to wear his beard consistent with his religious belief. *Kane*, 19 F.4th at 172.

Accordingly, Talukder has failed to establish irreparable harm as required to obtain the preliminary injunctive relief he seeks. Because a preliminary injunction cannot issue absent a showing of irreparable harm, the Court does not address whether Talukder has shown a substantial likelihood of success on the merits.

### III.     Judge Aaron Did Not Err in Finding Talukder Has an Adequate Alternative Remedy at Law

For the reasons stated above, Judge Aaron correctly concluded that, for the purposes of the instant motion for a preliminary injunction, Talukder has an adequate alternative remedy at law. As the Second Circuit explained in *Kane*, adverse employment consequences "could be remedied with money damages, and reinstatement is a possible remedy as well." *Id.* at 171. Although the Court does not address the merits of Talukder's claims seeking permanent injunctive relief, it adopts the Report's recommendation that Talukder is not entitled to a preliminary injunction instating him as a DOCCS trainee officer at this stage in the litigation.

## CONCLUSION

For the foregoing reasons, Talukder's objections are overruled, and Judge Aaron's Report is adopted in full. Pursuant to the Court's April 27, 2023 order, the parties shall propose next steps in this matter by June 2, 2023, and Defendants shall answer the Complaint no later than June 16, 2023.

SO ORDERED.

Dated:      May 26, 2023
            New York, New York

_____
Ronnie Abrams
United States District Judge